UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------X
GARY G. HIGGINS,                         :
                                         :        3:06-CV-01446 (AVC)
                    Plaintiff,           :
                                         :
                                         :
        v.                               :
                                         :
JOURNAL REGISTER COMPANY,                :
NEW ENGLAND ACQUISITION                  :
CORPORATION, NEW HAVEN                    :
REGISTER, LLC, JOURNAL NEWS,             :
INC., and JOURNAL REGISTER EAST,         :
INC. a/k/a SHORE LINE NEWSPAPERS         :
and/or SHORE LINE/ELM CITY               :
NEWSPAPERS,                              :
                                         :        JULY 27, 2007
                    Defendants.          :
---------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendants Journal Register Company, New England Acquisition Corporation, New Haven Register LLC, Journal News, Inc., and Journal Register East, Inc. a/k/a Shoreline Newspapers and/or Shoreline/Elm City Newspapers (collectively "defendants") submit this Memorandum of Law in opposition to plaintiff's Motion to Compel dated July 20, 2007.

## I.     FACTUAL BACKGROUND

On March 24, 2006, more than six months before plaintiff filed his Affidavit of Illegal Discrimination with the Connecticut Commission on Human Rights and Opportunities, alleging discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60, et seq., defendants provided him with documentation evidencing the 1997 dissolution of New England Acquisition Corporation ("NEAC"). Despite his knowledge of NEAC's dissolution, plaintiff, who was not employed by defendant Shoreline Newspapers until April of 2001, named NEAC as a defendant in his action, a move that

plaintiff's counsel referred to during the resulting November 28, 2006 Rule 26(f) conference as "childish."   See Affidavit of Gregory A. Brown, Paragraphs 2 and 3, submitted herewith as Exhibit A.

On December 1, 2006, before the parties' Rule 26(f) report was even finalized, plaintiff issued his first set of Interrogatories and Requests for Production, the latter of which included Requests for Production Nos. 15-18, seeking, *inter alia*, corporate records and financial data for each named defendant.   See Pltf's Exh. A.   After securing an extension of time to respond, defendants served their responses on February 2, 2007, objecting to Request for Production Nos. 15-18, as "overly broad in scope and seek[ing] documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this action."   Throughout the lengthy meet and confer process, defendants, although willing to compromise on the scope of any potential document production, never waived their objections.   Brown Aff. ¶ 4.

Plaintiff responded to defendants' objections by claiming the disputed documents were relevant to plaintiff's claim that defendants were so-called alter-egos of one another.   According to plaintiff, proving defendants' alleged alter-ego status was necessary to aggregate "Defendants' net worth and relate[d] to Plaintiff's damage claims."   See Brown Aff. ¶ 5.   After defendants reminded plaintiff that the ADEA did not provide for punitive damages, and that Connecticut law limited punitive damages to attorneys' fees and costs, see Brown Aff. ¶ 5, plaintiff responded on April 17, 2007 with *ad hominem* attacks and a fresh theory of relevance, *to wit*, that "the need to establish the alter-ego status of the Defendants" related to plaintiff's concerns regarding "ensur[ing] collection of the judgment to be entered against Defendants."   See Brown Aff. ¶ 5.

Defendants' responded to plaintiff's latest rationalization in a letter dated April 19, 2007, in which defendants explained that:

> It is self-evident that "the discovery of facts concerning a defendant's ... ability to satisfy a judgment" is "not relevant, and cannot lead to the discovery of admissible evidence" because, by definition, "such information does not become relevant prior to judgment with execution unsatisfied." <u>McCurdy v. Wedgewood Capital Mgm't Co., Inc.</u>, 1998 WL 964185, at *10 (E.D. Pa. Nov. 16, 1998). In the unlikely event plaintiff procures a judgment in this action, and the judgment is not satisfied by The New Haven Register, plaintiff could then pursue discovery on the alter ego issue pursuant to Fed. R. Civ. P. 69(a). Until then, however, the matter is not a proper subject of discovery.

Brown Aff. ¶ 5.

During the subsequent telephone conference held on April 27, 2007, plaintiff again changed his tune, this time claiming that the documents and information sought were relevant to his attempt at establishing the "liability" of the defendants. Brown Aff. ¶ 6. Plaintiff provided no explanation, however, as to how the corporate resolutions and financial data of various entities affiliated with his actual employer made it more or less likely that plaintiff was discriminated against when his employment was terminated by Shoreline Newspapers.

At this time, plaintiff offered to serve a Third Set of Interrogatories narrowing the scope of the information sought by Request for Production Nos. 15-18. Brown Aff. ¶ 6. In an effort to resolve the dispute and avert judicial intervention, defendants agreed to this approach. Brown Aff. ¶ 6. Plaintiff served his third set of Interrogatories, along with his Requests for Admission, which had not been discussed during that April 27, 2007 conference, on April 30, 2007. <u>See</u> Pltf's Exh. B; Brown Aff. ¶6. Moreover, contrary to plaintiff's representation, the resulting Interrogatories and Requests for Admission did not narrow the scope of the requested discovery. Instead, they asked defendants to review all of the documents sought by the disputed requests, and rather than producing them for plaintiff's inspection, to summarize them. Consequently, defendants renewed their objections to plaintiff's overly broad requests and, subject to those objections, provided narrow, but entirely sufficient, responses. <u>See</u> Pltf's Exh. C.

On June 20, 2007 the parties engaged in another telephone conference during which plaintiff indicated that defendants narrow responses were insufficient, and demanded further compliance with its various requests.  Plaintiff again explained only that the documents and information sought were relevant to his claims of alter-ego status.  Continuing to miss the forest for the trees, plaintiff provided no explanation of how defendants' purported alter-ego status related to plaintiff's contention that his termination resulted from age-based animus.  Brown Aff. ¶ 7.

In addition to plaintiff's ongoing attempts to obtain production regarding defendants' purported alter-ego status, on May 25, 2007, plaintiff sent defendants correspondence requesting certain documents identified during various depositions, including the personnel file of Heidi Slomkowski, an employee whose improper hiring led to plaintiff's termination.  Brown Aff. ¶¶ 8-9.  On June 6, 2007, plaintiff sent defendants a letter evidencing their agreement to amend that request to include only those documents showing when Ms. Slomkowski was placed on the Shoreline Newspapers' payroll.  Brown Aff. ¶ 9.

Defendants remitted the documents requested in plaintiff's May 25, 2007 letter, designated as Bates Nos. JRC 0722 through JRC 0915, along with a cover letter acknowledging the enclosure of "documents responsive to the requests made in [plaintiff's] May 25, 2007 letter," on June 20, 2007.  Brown Aff. ¶ 8.  Absent from this production was Ms. Slomkowski's personnel file, as via an agreement reached in response to Defendants' relevance objections, and reflected in plaintiff's correspondence dated June 6, 2007, plaintiff agreed to limit this request to only those documents demonstrating when Ms. Slomkowski was placed on the Shoreline Newspapers' payroll.  Defendants produced these documents on June 29, 2007.  Brown Aff. ¶ 9.

## II.    <u>ARGUMENT</u>

Although plaintiff reports that he "has made substantial efforts in an attempt to resolve this matter without the need for court intervention," Pltf's Brief at 4, the fact remains that he has yet to provide any logical explanation as to the relevance of the disputed documents and information. Throughout the meet and confer process, plaintiff demonstrated a disturbing trend of demanding the production of documents that had already been produced, and patently misrepresenting statements made by counsel during verbal conferences. In addition, plaintiff focused an inordinate amount of time and resources seeking extensive production of documents and information that he avers are relevant to defendants' alleged alter-ego status, without providing any explanation as to how his alter-ego allegations are in any way pertinent to his claim that he was discriminated against of the basis of his age. Plaintiff's Memorandum of Law in Support of his Motion to Compel continues both of these trends.

### A.    The vast majority of documents and information sought by plaintiff's Motion to Compel have already been produced.

The first part of Plaintiff's Memorandum of Law in support of his Motion to Compel inexplicably seeks documents that have already been produced, and otherwise mischaracterizes the record. For example:

- Plaintiff demands that the Court compel production of documents contained in Kevin Walsh's personal files on David Compton and Gary Higgins. Pltf's Brief at 6. These documents were produced on June 20, 2007, at Bates Nos. JRC 0768 through JRC 0915. Brown Aff. ¶ 8.

- Plaintiff demands compulsion of a memorandum from Mr. Walsh to Mr. Compton "indicat[ing] that, if Mr. Compton did not achieve certain numbers in the first quarter of 2007, his employment would be in jeopardy." Pltf's Brief at 6. The January 15, 2007

performance memorandum was produced on June 20, 2007, at Bates No. JRC 0767.  <u>See</u>
Brown Aff. ¶ 8.

- Plaintiff also seeks compulsion of the personnel file of Heidi Slomkowski, Pltf's Brief at
7, despite the fact that plaintiff agreed to limit production regarding Ms. Slomkowski's
personnel file to documents reflecting the date she was placed on payroll.  Brown Aff. ¶
9.   These documents were produced on June 29, 2007 at Bates Nos. JRC 0916 through
JRC 0918.  Brown Aff. ¶ 9.  Notably, while plaintiff claims not to have received these
documents, his attorney, Karen M. Leser, references the accompanying correspondence
in her affidavit.  <u>See</u> Pltf's Exh. G, ¶ 2.

- Plaintiff claims he has been unable to locate Bob Lee's file on plaintiff in defendants'
document production.  Pltf's Brief at 7.  Mr. Lee is the head of Human Resources for the
New Haven Register and Shoreline Newspapers; his "file" is plaintiff's personnel file.
This file has been produced multiple times, including in response to Request for
Production No. 5.   All of the documents contained within that file were part of
defendants' initial production of Documents.  Brown Aff. ¶ 4.

- Plaintiff also contends that defendants have not produced documents contained in files
maintained by Mr. Walsh's assistant and Jack Kramer.  Pltf's Brief at 7-8.  Plaintiff
formally requested these documents via letter dated May 25, 2007.  Brown Aff. ¶ 8.
Defendants responded with correspondence dated June 20, 2007, which "enclosed
documents responsive to the requests made in [plaintiff's] May 25, 2007 letter."  No
additional confirmation was warranted.

- Plaintiff represents that "Defendants stated that they would stipulate as to the alter ego
status of all defendants with the exception of the Journal Register Co."  This is simply
untrue.  Defendants made no such representation.   Brown Aff. ¶ 7.

**B.      Documents and information sought to prove defendants' alleged alter-ego status are irrelevant to plaintiff's claims of age discrimination.**

In addition to seeking documents he has already received and otherwise mischaracterizing the record, plaintiff implores the Court to compel responses to Interrogatories and Requests for Production pertaining to his allegations regarding defendants' alter-ego status.[1] While plaintiff presents a smattering of judicial authority describing the evidentiary requisites for establishing alter-ego status, he omits any explanation of how this information is at all relevant to his discrimination claim.  Clearly it is not.

**1.      Scope of Permissible Discovery**

"As a general proposition, the discovery rules ... are to be construed broadly.  A valid discovery request need only 'encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  Yancey v. Hooten, 180 F.R.D. 203, 207 (D. Conn. 1998)(Citations omitted).

"Yet one unfortunate consequence of our liberal discovery rules is that lawyers often attempt to bury opposing counsel in paperwork by requesting material that they don't really want and don't really need.  This is particularly true in the employment law context, where it is universally known that a vindictive employee, an aggressive lawyer and a couple stray comments are all that one needs to embroil any employer in protracted, expensive litigation."  Rowlin v. Alabama Dept. of Public Safety, 200 F.R.D. 459, 461 (M.D. Ala. 2001)(Citation omitted); See also.

In response to these and similar concerns, "[a] district court's control over discovery has been enhanced since the changes in the Federal Rules of Civil Procedure in 2000."  Sallis v. University of Minnesota, 408 F.3d 470, 477 (8th Cir. 2005).  More specifically, the rules "were

---

[1] Specifically, plaintiff seeks to compel responses to Requests for Production Nos. 15-18, and Interrogatory Nos. 2-5 of his Third Set of Interrogatories.

amended 'to involve the court more actively in regulating the breadth of sweeping or contentious discovery.' In particular, the new rules limit the breadth of discovery that can occur absent court approval. Under Rule 26(b)(1), for example, discovery must now relate more directly to a 'claim or defense' than it did previously, and 'if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved.'" Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 967-68 (9th Cir. 2004)(Citations omitted).

"The 2000 Amendments, while not intended to alter dramatically the scope of discovery, were intended to make it 'narrower than it was, in some meaningful way.'" Collens v. City of New York, 222 F.R.D. 249, 252 (S.D.N.Y. 2004)(Citation omitted). "Relevance as it stands after the 2000 amendments, 'requires the courts and the parties to focus on the actual claims and defenses involved in the action.'" Breon v. Coca-Cola Bottling Co. of New England, 232 F.R.D. 49, 52 (D. Conn. 2005)(Citations omitted). "[A]nd 'when judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action." Collens, 222 F.R.D. at 252 (Citation omitted).

Certainly, "[t]he definition of relevance continues to be liberally interpreted even after changes to Rule 26 in 2000." Breon, 232 F.R.D. at 52. "Yet, there are boundaries to discovery. 'A court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.' In addition, '[t]he district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled.'" Favale v. Roman Catholic Diocese of Bridgeport, 232 F.R.D. 49, 52 (D. Conn. 2005)(Citations omitted).

"Thus, courts have the duty to pare down overbroad discovery requests under Rule 26(b)(2), which provides that information may sometimes be withheld, even if relevant. The court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, discounted by society's interest in furthering the truthseeking function." <u>Rowlin</u>, 200 F.R.D. at 461 (Citations omitted); <u>see also</u> <u>Patterson v. Avery Dennison Corp.</u>, 281 F.3d 676, 681 (7th Cir. 2002)(citing <u>Rowlin</u> and noting that it "plac[es] limits on discovery in employment discrimination case.")

"While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses," <u>Collens</u>, 222 F.R.D. at 253 (Citations omitted). Rather, "some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." <u>Marchello v. Chase Manhattan Auto Finance Corp.</u>, 219 F.R.D. 217, 218 (D. Conn. 2004)(Citation and internal quotation marks omitted). Plaintiff fails to make this threshold showing.

## 2.    Defendants' Alleged Alter-Ego Status is Irrelevant

"In the alter-ego situation, a plaintiff attempts to prove that a company other than the one that formally employed her should actually be treated as her employer." <u>Russo v. Lightning Fulfillment, Inc.</u>, 196 F. Supp. 2d 203, 208 (D. Conn. 2002)(rejecting application of alter-ego test in Title VII action). As a practical matter, in employment discrimination cases alter-ego status is relevant only in those limited circumstances in which applicability of the law hinges on an employer's size, such as the ADEA's 20-employee statutory threshold, 29 U.S.C. § 630(b), or where a plaintiff seeks punitive damages pursuant to Title VII's stratified caps, 24 U.S.C. § 1981a(b)(3). <u>See</u>, <u>e.g.</u>, <u>Papa v. Katy Industries, Inc.</u>, 166 F.3d 937, 939 (7th Cir. 1999)(rejecting

the integrated employer test, but recognizing "three situations in which the policy behind the exemption of the *tiny employer* is vitiated by the presence of an affiliated corporation.")(Emphasis supplied). Neither of these limited circumstances is found here.

Plaintiff's bare assertion that the disputed documents and information are necessary to establish the "liability" of the various defendants is off base. At all times relevant to this litigation, defendants have steadfastly maintained that plaintiff was an employee of the Shoreline Newspapers, an operating division of Journal Register East Inc. See Brown Aff. ¶ 2. In addition, defendants acknowledge that Shoreline Newspapers has approximately 95 employees placing it well-north of the ADEA's 20 employee threshold. See Brown Aff. ¶ 2. Because plaintiff's direct employer falls within the purview of the ADEA, defendants' alleged alter-ego status—and therefore the disputed documents and information—are completely irrelevant to plaintiff's ability to advance his claims against his employer.

Similarly, unlike cases involving Title VII's stratified mechanism for capping punitive damages, defendants' alleged alter-ego status has no impact on plaintiff's entitlement to damages in this ADEA action. As plaintiff is aware, the ADEA does not permit recovery for punitive damages, Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 147 (2d Cir. 1984), and Connecticut law limits punitive damages to attorneys' fees and costs. See Shaw v. Greenwich Anesthesiology Associates, P.C., 200 F. Supp. 2d 110, 117-18 (D. Conn. 2002). Thus, notwithstanding plaintiff's initial claims to the contrary, defendants' alleged status as alter-egos has no bearing whatsoever on his alleged entitlement to damages.

Despite being repeatedly invited to do so, plaintiff has elucidated no cogent explanation as to the relevance of defendants' alleged alter-ego status to plaintiff's claims that he was the victim of age-based discrimination, and nothing in his Memorandum of Law in support of his Motion to Compel remedies this deficiency. Plaintiff has presented no evidence that anyone

other than his direct supervisor, Kevin Walsh, was involved in the termination decision alleged to be discriminatory.  Indeed, while plaintiff claims that documents and information concerning the relationship of defendants is necessary to prove "liability," he fails to explain how the identities of NEAC's shareholders or the New Haven Register LLC's financial data makes it any more or less likely that any agent of those entities were involved in the decision to terminate plaintiff's employment.

At best, then, plaintiff's request for these documents smacks of an attempt to expand the permissible scope of discovery.  This is not a sufficient basis for seeking discovery of documents and information requiring defendants to expend significant time and resources to sift through years of corporate records, resolutions, and financial data.

## III.    CONCLUSION

Ultimately plaintiff's Motion to Compel seeks documents that have either already been produced or are irrelevant to plaintiff's claims of age-based discrimination.  Therefore, the Motion should be denied.

Respectfully submitted,

DEFENDANTS,

JOURNAL REGISTER COMPANY, NEW
ENGLAND ACQUISITION
CORPORATION, NEW HAVEN
REGISTER, LLC, JOURNAL NEWS,
INC., and JOURNAL REGISTER
EAST,INC. a/k/a SHORE LINE
NEWSPAPERS and/or SHORE LINE/ELM
CITY NEWSPAPERS

Lawrence Peikes (ct 07913)
lpeikes@wiggin.com
Gregory A. Brown (ct 27393)

11

gbrown@wiggin.com
Wiggin and Dana LLP
Their Attorneys
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(203) 363-7600
(203) 363-7676 (fax)

## CERTIFICATE OF SERVICE

This will certify that on July 27, 2007 a copy of the foregoing Affidavit of Gregory A. Brown was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's CM/ECF System.

James E. Miller, Esq.
Patrick A. Klingman, Esq.
Karen M. Lesser, Esq.
Shepherd, Finkelman, Miller, & Shah, LLC
65 Main Street
Chester, CT 06412

James C. Shah, Esq.
Nathan Zipperian, Esq.
Shepherd, Finkelman, Miller, & Shah, LLC
35 E. State Street
Media, PA 19063

Gregory Brown

\3031\95\661472.1

13